ORIGINAL

William Boles
26740 Kingwood Road
Murrieta, CA   92563
(951) 808-5800



# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

Western  Division - Los Angeles

|  |  |
|---|---|
| William Boles | Case No. 2:08-cv-01989-PSG-E |
| Plaintiff, | **SECOND AMENDED**<br>**VERIFIED COMPLAINT** |
| vs. | **Quiet Title,** |
| MERSCORP, INC.; | **TILA (15 U.S.C. § 1601 et seq.),** |
| MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC. | **Breach of Contract,** |
| AMERICAN HOME MORTGAGE<br>INVESTMENT CORP.; | **Breach of Fiduciary Duty,** |
| AMERICAN BROKERS CONDUIT, LLC; | **RESPA (12 U.S.C. § 2601 et seq.),** |
| AMERICAN HOME MORTGAGE SERVICING, INC.; | **Nuisance / Wrongful Foreclosure,** |
| NATIONAL CITY MORTGAGE | **FDCPA (15 U.S.C. §§ 1692_1692p)** |
| a/k/a NATIONAL CITY MORTGAGE CO; | |
| CLC CONSUMER SERVICES CO.; | |
| E*TRADE BANK; | |
| UNKNOWN OWNERS OF THE EVIDENCE OF<br>THE DEBT and/or OWNERS OF THE NOTE; | |
| AHMSI DEFAULT SERVICES INC.; | |

1

SECOND AMENDED COMPLAINT

T.D. SERVICE COMPANY;                    )
                                         )
OPTION ONE MORTGAGE CORPORATION,         )
                                         )
        Defendants.                      )        [Supplemental State Claims]

**Notes on Amendments**

For ease of reading, all amendments are underlined, and the paragraph numbers are unchanged.  This Complaint is amended to make the following changes:

-        to change paragraphs 135 and 190 to request a quieting of title as of March 25, 2008, which is the date the Complaint in this case was filed;

-        to change paragraphs 74 and 110 to omit all conclusory allegations, and specify that the First and Second Lenders failed to deliver to the Plaintiff a copy of Notice of Right to Cancel at closing, as required by 15 U.S.C. § 1635 [1] ;

-        to change paragraph 136 (relating to TILA disclosures at closing) to omit all conclusory allegations, and specify (upon information and belief) that the First and Second Lenders failed to disclose the true identity of the creditor at closing, as required by 15 U.S.C. § 1638(a)(1);

-        to omit paragraph 138 (relating to notice of rate increases);

-        to omit paragraphs 142 through 144 (the TILA Damages claim);

-        to change paragraph 2 to omit allegations that Plaintiff is entitled to special damages and attorney's fees;

-        to add AHMSI Default Services Inc., T.D. Service Company and Option One Mortgage Corporation as Defendants, to allege acts committed since the initial filing of the Complaint;

---

[1] Please note that this allegation was present in the Amended Complaint, and it is <u>not</u> conclusory, therefore the Court's dismissal of Plaintiff's TILA rescission claim was in error.

SECOND AMENDED COMPLAINT

2

-    to substitute National City Mortgage as Defendant in place of National City Bank;

-    to allege that AHMSI Default Services Inc., T.D. Service Company and Option One Mortgage Corporation are committing Nuisance / Wrongful Foreclosure by attempting to foreclose without proper authority, with new allegations in paragraphs 182-1 through 182-4 and 194-1;

-    to allege that AHMSI Default Services Inc., T.D. Service Company and Option One Mortgage Corporation have violated the Fair Debt Collection Practices Act by failing to respond to debt dispute letters, with new allegations in paragraphs 182-1 through 182-4 and 194-2;

-    to change and add other paragraphs, which are indicated by underlining.


I, William Boles, declare:

### Preliminary Statement

1.    Defendants violated and impaired Plaintiff's Constitutional rights, statutory and common law rights to own property and the privacy of their home. My home is my castle.

2.    This action is an action for damages and equitable relief, _including compensatory damages, punitive damages and costs, but excluding FRCP 9(g) "special damages,"_ to quiet the title to Plaintiff's property, to redress violation of the Plaintiff's constitutional and statutorily protected rights, state statutory and common law rights.

3.    Plaintiff seeks rescission of the loan agreement, cancellation of the Note and Mortgage, restoration of title to the property in Plaintiff's names, restitution of all money, including loan fees, paid by Plaintiff, restitution of all closing costs paid by Plaintiff for said loan, and other equitable relief as this Court deems proper.

SECOND AMENDED COMPLAINT

4.      In this Complaint, allegations marked (*) are made upon information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  All other allegations are made of personal knowledge.

### Jurisdiction and Venue

5.      Jurisdiction is under including but not limited to 12 U.S.C. § 2614;  28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2605(f), 2607(d)(2), 2610, 3416;  15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1640, 1641(a), 1692k, 1681p. The Plaintiff requests that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Venue for this action lies in this district since:

        (a) Defendants are subject to personal jurisdiction of the State of California and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

        (b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

7.      This matter is properly filed in this District. The claims arose in this District and all Defendants reside and/or do business in this District.

### Parties

8.      Plaintiff is a citizen of California.

***MERSCORP***

9.      Defendant MERSCORP, INC. is a Delaware corporation which owns, and is responsible for the actions of, Defendant MERS.  Its shareholders are various companies engaged in the business of mortgage banking.[2]

10.     Defendant MERSCORP, INC. has its principal place of business in Vienna, Virginia and can be served with process through its registered agent, C T Corporation System, 818 West Seventh St., Los Angeles, CA 90017.

11.     (*) MERSCORP, INC. has no other function than to own MERS, and conducts no business in its own name.

***MERS***

12.     Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a nonprofit organization and is a wholly-owned subsidiary of Defendant MERSCORP, INC. MERS is incorporated in Delaware and has its principal place of business in Vienna, Virginia. MERS is not in good standing in Delaware. Currently, and at all times relevant to this Complaint, MERS' permission to do business in California is "suspended."

13.     (*) MERS was created by the mortgage industry to enable high-speed trading of loans, and packaging of loans into pools, via electronic means, without recording any Assignments in the county property records.  MERS' computer software was written by Ross Perot's company, EDS. MERS possesses user manuals for all such software.

---

[2] The Defendants' shareholders include: ABN-AMRO Mortgage Group, Inc.; American Land Title Association; CCO Mortgage Corporation; Chase Home Mortgage Corporate of the Southeast; CitiMortgage, Inc.; Commercial Mortgage Securities Association; Corinthian Mortgage Corporation; Countrywide Home Loans, Inc.; EverHome Mortgage Company; Fannie Mae; First American Title Insurance Corporation; Freddie Mac; GE Mortgage Services, LLC; GMAC Residential Funding Corporation; Guaranty Bank; HSBC Finance Corporation; Merrill Lynch Credit Corporation; MGIC Investor Services Corporation; Mortgage Bankers Association; Nationwide Advantage Mortgage Company; PMI Mortgage Insurance Company; Stewart Title Guaranty Company; SunTrust

SECOND AMENDED COMPLAINT

14.     However, from a legal point of view, the computer/electronic aspect of MERS is not

significant. Everything that MERS does, and everything that is done through MERS, could have

been done before the age of computers, using traditional oral and written communication methods.

15.     (*) There is no government agency that regulates or oversees MERS.

### FIRST LENDER

16.     Defendant AMERICAN HOME MORTGAGE INVESTMENT CORP. is a Maryland

corporation which owns, and is responsible for the actions of, Defendant AMERICAN BROKERS

CONDUIT LLC (collectively "First Lender") , neither of which is registered to do business in

California.

17.     Defendant AMERICAN HOME MORTGAGE INVESTMENT CORP. can be served with

process through its registered agent, Corporation Service Company, 80 State Street, Albany, NY

12207_2543.

18.     Defendant AMERICAN BROKERS CONDUIT LLC is a Delaware corporation. The name

"American Brokers Conduit" appeared as "Lender" on the closing documents of the First Loan.

Either American Home Mortgage Investment Corp. or American Brokers Conduit is a member of

MERS and is an independent processor of mortgage applications.

19.     Defendant AMERICAN BROKERS CONDUIT LLC can be served with process through

its registered agent, Corporation Service Company, 2711 Centerville Road Suite 400, Wilmington,

DE 19808.

### FIRST LOAN SERVICER

---

Mortgage, Inc.; United Guaranty Corporation; Washington Mutual Bank; Wells Fargo Bank, N.A., and WMC
Mortgage Corporation.

SECOND AMENDED COMPLAINT

20.     Defendant AMERICAN HOME MORTGAGE SERVICING, INC. is a Maryland corporation, whose business status with the Secretary of State of California is "forfeited," and which is acting as servicer for the First Loan.

21.     Defendant AMERICAN HOME MORTGAGE SERVICING, INC. can be served with process through its registered agent, Illinois Corporation Service Co., 801 Adlai Stevenson Dr., Springfield, IL 62703.

**SECOND LENDER**

22.     Defendant NATIONAL CITY MORTGAGE is a division of National City Bank of Indiana, a National Banking Association, which in turn is owned by National City Bank(collectively "Second Lender").  Defendant NATIONAL CITY MORTGAGE used the name "NATIONAL CITY MORTGAGE CO." to register with the Secretary of State of Ohio.  None of these three entities is registered to do business in California.  The name "National City Mortgage a division of National City Bank of Indiana" appeared as "Lender" on the closing documents of the Second Loan.

23.     Defendant NATIONAL CITY MORTGAGE CO. can be served with process at 3232 Newmark Dr, Miamisburg Ohio 45342.

**E-TRADE (ASSIGNEE OF SECOND LOAN)**

24.     Defendant E*TRADE BANK ("E-Trade") is a Federal savings bank, Member FDIC.

25.     E*TRADE BANK claims to be the holder of the Second Note. However, there is no assignment to E*TRADE BANK in the county property records.  Plaintiff has been making his payments for the Second Loan to E*TRADE BANK, and was current up until the date of filing of the Complaint in this case, on which day Plaintiff rescinded both loans.

7

SECOND AMENDED COMPLAINT

26.     Defendant E*TRADE BANK can be served with process through its CEO, Donald Layton, 671 North Glebe Road, 16th Floor, Arlington,VA 22203.

***SECOND LOAN SERVICER***

27.     Defendant CLC CONSUMER SERVICES CO. is a Pennsylvania corporation whose phone number is 1_800_ETRADE_1, is acting as the servicer for the Second Loan.

28.     CLC CONSUMER SERVICES CO. can be served with process at its office at 2730 Liberty Avenue Pittsburg, PA 15222.

***UNKNOWN OWNERS***

29.     (*) Defendant UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or OWNERS OF THE NOTE is an unknown corporation.

***AHMSI DEFAULT SERVICES, INC.***

29-1.  Defendant AHMSI DEFAULT SERVICES, INC. is a Delaware Corp. and may be served with process through its statutory agent c/o CT CORPORATION SYSTEM, 818 West 7th Street, Los Angeles, California 90017.

***T.D. SERVICE COMPANY***

29-2.  Defendant T.D. SERVICE COMPANY may be served with process by serving the Officer in Charge or the statutory agent, Patrick J. Dobiesz, at 1820 East 1st Street, Suite 210, Santa Ana, CA 92705.

***OPTION ONE MORTGAGE CORPORATION***

29-3.  Defendant OPTION ONE MORTGAGE CORPORATION was formerly a subsidiary of H&R Block and is now a subsidiary of Defendant AMERICAN HOME MORTGAGE

SECOND AMENDED COMPLAINT

SERVICING, INC., and may be served with process through its registered agent C T

CORPORATION SYSTEM, at 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.

29-4.  The above three Defendants (AHMSI DEFAULT SERVICES, INC., T.D. SERVICE

COMPANY and OPTION ONE MORTGAGE CORPORATION) are participating in wrongful

foreclosure of the First Loan.

### Factual Allegations:

All the following allegations are intended to be "without limitation" and will be

supplemented by other facts to be found in discovery.

30.     Plaintiff was and is the owner of the property at **26740 Kingwood Road, Murrieta, CA

92563** (hereafter "the Homestead"), legally described as:

> **LOT 5 OF TRACT 29111-1, IN THE CITY OF MURRIETA, COUNTY OF
> RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN
> BOOK 304 PAGES 68 THROUGH 74 OF MAPS, RECORDS OF RIVERSIDE
> COUNTY, CALIFORNIA.**

31.     Plaintiff is, and has been, in continuous possession of the Homestead.

32.     Plaintiff did not make a forcible entry into the Homestead.

33.     Plaintiff is not unlawfully holding the possession of the Homestead by force.

34.     Plaintiff has never sold the Homestead.

### *THE FIRST REFINANCE LOAN*

35.     On or about June 7, 2006, Plaintiff signed a Promissory Note in the amount of $470,000

("First Note"), and entered into a consumer mortgage transaction ("First Loan") with the First

Lender, in the form of a boilerplate adhesion contract drafted by the First Lender (MIN

100024200013060039), in which the purported extended consumer credit was subject to a finance

SECOND AMENDED COMPLAINT

charge and was initially payable to the First Lender on the face of the First Note. The First Loan closed on June 15, 2006.

36.    (*) The First Loan was a federally related mortgage loan.

37.    (*) The First Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

38.    (*) No one ever paid any consideration for the aforementioned First Note.

39.    (*) The First Note has subsequently been pledged as collateral for other secured transactions.

40.    The First Note stated: "In return for a loan which I have received, I promise to pay U.S. $470,000.00 ... to the order of ... American Brokers Conduit ..."

41.    (*) In fact, Plaintiff had not received a loan from American Brokers Conduit.

42.    (*) The First Lender and AMERICAN HOME MORTGAGE SERVICING, INC. keeps accounting entries for the First Loan in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the First Loan. These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006). These accounting ledger entries show whether or not Plaintiff received a loan from American Brokers Conduit.

43.    (*) Under the "matching" principle of GAAP, the First Lender can produce a ledger showing all costs and revenues resulting from the First Loan.

SECOND AMENDED COMPLAINT

44.     (*) The First Lender keeps records for all loans, including the First Loan, in a form ready to produce for government inspection in case of an audit.

45.     (*) The First Note was endorsed in blank and treated as bearer paper

46.     (*) The First Note was not negotiated to MERS for value.

47.     (*) The First Note was not negotiated to its current holder for value.

48.     As part of the First Loan, and to secure the First Note, Plaintiff signed a Deed of Trust ("First Deed"), naming United Title Company as Trustee.

49.     (*) United Title Company was unaware of this transaction and was never put on notice of this transaction by the First Lender.

50.     The First Deed stated: "MERS is a separate corporation that is acting solely as nominee for Lender [American Broker's Conduit] and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument."

51.     (*) However, MERS has never owned any beneficial interest under the First Deed. MERS did not provide any capital for the First Loan. MERS has never been the recipient of any loan repayment made by Plaintiff.

52.     (*) MERS had a contract with either American Home Mortgage Investment Corp. or American Brokers Conduit.

53.     (*) The party for whom MERS was acting as nominee has changed, however MERS conceals the identity of the party for whom MERS was acting as nominee, and falsely represents that MERS is still nominee for the party named in the First Deed of Trust.

54.     (*) When a loan goes into default, or when a loan is the subject of a lawsuit, MERS routinely records an assignment from the first owner – the one named in the Mortgage or Deed of

SECOND AMENDED COMPLAINT

Trust – to the current owner; however, by that time, MERS is no longer acting as nominee for the first owner, and there is in fact no assignment directly from the first member to the current member.  In other words, MERS records a false chain of title.

55.     (*) MERS has gone to great lengths to conceal and hide the beneficial owners and holders in due course of various mortgage loans and pools of loans.  MERS has never directly produced information from the MERS® System to third parties, in discovery or otherwise. Pursuant to Rule 9, Section 1(b) of the Rules of Membership, MERS has

> "no ownership rights whatsoever in or to any information contained on the MERS® System." It is our position that the information contained on the MERS® System is the private, proprietary property of our Members, and that the information should be produced, if at all, by the Member who owns the information. This approach protects the privacy of the information, and allows our Members to control how and when it is distributed.

56.     (*) The information contained in MERS' computer system shows all investors, servicers, subservicers, and the document custodian who actually is the entity with physical possession of the note. Such information is easily produced.

57.     (*) MERS keeps records of due diligence and quality control reports; custodian exception reports; reports of investigations of such loss, theft or destruction; the last sign in and sign out of the promissory note via the custodian's records and register; and receipts of the last mailing or transfer of such note, which are generally made via overnight delivery and/or registered mail.

58.     (*) In at least 50% of foreclosure cases, MERS has claimed the note is lost, but has never filed police or insurance reports, and the "loss" fails to be reflected in the documents listed in the preceding paragraph.

59.     (*) MERS never paid any consideration for the First Deed of Trust.

SECOND AMENDED COMPLAINT

12

60.    The First Loan was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z.

61.    (*) At all times relevant to this action, the First Lender regularly extended consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and was the person to whom the debt arising from the consumer credit transaction was initially payable on the face of the evidence of indebtedness, thus the Lender is a "creditor" under 15 U.S.C. § 1602(f)(1).

62.    The alleged obligation was secured by the Homestead and principal dwelling of Plaintiff.

63.    The First Lender was "the creditor" under 15 U.S.C. § 1635(a).

64.    The obligation was secured by the Homestead and principal dwelling of Plaintiff.

65.    (*) The First Lender paid a "Premium Yield Adjustment," otherwise known as a Yield Spread Premium, in the amount of $14,687.50, to the broker Park Place Funding POC, for no service or work other than the choice of a loan with a high interest rate.

66.    (*) The First Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

67.    (*) The First Loan was sold before it was funded.

68.    (*) The First Lender did not lend its assets to Plaintiff nor for Plaintiff's benefit.

69.    (*) The First Lender did not lend the assets of its depositors, investors, sub-lenders, partners, contractors, or any similar third party, to Plaintiff nor for Plaintiff's benefit.

70.    (*) The First Lender did not lend any money to Plaintiff nor for Plaintiff's benefit.

71.    (*) The First Lender did not lend nor provide any "dollars," as defined by Congress, to Plaintiff nor for Plaintiff's benefit.

13

SECOND AMENDED COMPLAINT

72.     (*) The First Lender did not lend any Federal Reserve Notes to Plaintiff nor for Plaintiff's benefit

73.     (*) The First Lender did not lend its credit to Plaintiff nor for Plaintiff's benefit.

74.     <u>At closing, the First Lender failed to deliver to the Plaintiff a copy of Notice of Right to Cancel, as required by 15 U.S.C. § 1635.</u>

75.     The First Lender failed to disclose the last date on which Plaintiff could cancel the loan.

76.     The First Lender failed to provide two copies of Notice of Right to Cancel in a form that Plaintiff could keep.

77.     This Complaint constitutes Notice of Rescission to all Defendants.  I WISH TO CANCEL LOAN NO. MIN 100024200013060039.

78.     Plaintiff is current on the First Loan and has made all payments as agreed.

79.     On June 15, 2006, the First Lender recorded its Deed of Trust as Instrument # 2006-0434352, falsely naming MERS as the original mortgagee.

80.     (*) However, MERS was not the true original mortgagee.

81.     (*) The First Loan is part of a loan pool covered by a Pooling and Servicing Agreement, a Master Servicing Agreement, a Subservicing Agreement, a Custodial Agreement, a Trust Agreement, & other agreements to be determined in discovery.  That loan pool is insured with both Mortgage Insurance and Credit Default Swaps and the only way to collect is to foreclose. The First Lender keeps records of Mortgage Insurance and Credit Default Swaps related to the First Loan.

82.     (*) The First Lender is not Owner and Holder of the First Note.

83.     The Second Loan is now being serviced by AMERICAN HOME MORTGAGE SERVICING, INC.

14

SECOND AMENDED COMPLAINT

84.    (\*) AMERICAN HOME MORTGAGE SERVICING, INC. has not credited all payments to Plaintiff's account.

85.    (\*) The First Note is not currently held by a legal entity of the type that is authorized to own and hold Notes (e.g. an individual, corporation, partnership, etc.)

86.    (\*) The Holder has discharged the First Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

87.    If the identity of the owner and holder of the First Note is not established now, someone else may show up later holding the First Note and sue Plaintiff or otherwise attempt to collect.

***THE SECOND LOAN***

88.    On or about July 7, 2006, Plaintiff signed a Promissory Note in the amount of $50,000 ("Second Note"), and entered into a consumer mortgage transaction ("Second Loan") with the Second Lender, in the form of a boilerplate adhesion contract drafted by the Second Lender, and the extended consumer credit was subject to a finance charge and was initially payable to the Second Lender on the face of the Second Note.

89.    (\*) The Second Loan was a federally related mortgage loan.

90.    (\*) No one ever paid any consideration for the aforementioned Second Note.

91.    (\*) The Second Note has subsequently been pledged as collateral for other secured transaction.

92.    (\*) At all times relevant to this action, the Second Lender regularly extended and offered to extend consumer credit subject to a finance charge or which, by written agreement, is payable in more than four installments (not including a down-payment) and offered services in support thereof.

15

SECOND AMENDED COMPLAINT

93.     The Second Note stated:

"Loan" means the loan evidenced by this Note. ... You agree that we are making this Loan directly to you.

94.     (*) In fact, "National City Mortgage a division of National City Bank of Indiana" did not make a loan directly to Plaintiff.

95.     (*) The Second Lender keeps accounting entries for the Second Loan in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the Second Loan.  These accounting ledger entries can be produced in a form similar to that described in the accounting textbooks listed above.  These accounting ledger entries show whether or not "National City Mortgage a division of National City Bank of Indiana" made a loan to Plaintiff.

96.     (*) Under the "matching" principle of GAAP, the Second Lender can produce a ledger showing all costs and revenues resulting from the Second Loan.

97.     (*) The Second Lender keeps records for all loans, including the Second Loan, in a form ready to produce for government inspection in case of an audit.

98.     The alleged obligation was secured by the Homestead and principal dwelling of Plaintiff.

99.     (*) The Second Lender knowingly inserted into the alleged documents several false and/or conclusory statements.

100.    (*) The Second Loan was sold before it was funded.

101.    (*) The Second Lender did not lend its assets to Plaintiff nor for Plaintiff's benefit.

102.    (*) The Second Lender did not lend the assets of its depositors, investors, sub-lenders, partners, contractors, or any similar third party, to Plaintiff nor for Plaintiff's benefit.

SECOND AMENDED COMPLAINT

16

103.    (*) The Second Lender did not lend any money to Plaintiff nor for Plaintiff's benefit.

104.    (*) The Second Lender did not lend nor provide any "dollars," as defined by Congress, to Plaintiff nor for Plaintiff's benefit.

105.    (*) The Second Lender did not lend any Federal Reserve Notes to Plaintiff nor for Plaintiff's benefit

106.    (*) The Second Lender did not lend its credit to Plaintiff nor for Plaintiff's benefit.

107.    (*) The Second Note was signed to "__" or "cash" or "bearer" and treated as bearer paper

108.    As part of the Second Loan, and to secure the Second Note, Plaintiff signed a Deed of Trust ("Second Deed"), naming NATIONAL CITY BANK OF INDIANA as Trustee.

109.    (*) NATIONAL CITY BANK OF INDIANA was unaware of this transaction and was never put on notice of this transaction by the Second Lender.

110.    At closing, the Second Lender failed to deliver to the Plaintiff a copy of Notice of Right to Cancel, as required by 15 U.S.C. § 1635.

111.    The Second Lender failed to provide two copies of Notice of Right to Cancel in a form that Plaintiff could keep.

112.    This Complaint constitutes Notice of Rescission to all Defendants.  I WISH TO CANCEL LOAN NO. 0004750773.

113.    Plaintiff is current on the Second Loan and has made all payments as agreed.

114.    On July 13, 2006, the Second Lender recorded its Deed of Trust as Instrument # 2006-0512060.

115.    (*) The Second Loan is part of a loan pool covered by a Pooling and Servicing Agreement, a Subservicing Agreement, a Custodial Agreement, and other agreements to be determined in

17

SECOND AMENDED COMPLAINT

discovery. That loan pool is insured with both Mortgage Insurance and Credit Default Swaps and the only way to collect is to foreclose. The Second Lender keeps records of Mortgage Insurance and Credit Default Swaps related to the Second Loan.

116.   (*) The Second Lender is not Owner and Holder of the Second Note.

117.   (*) E-Trade claims to be Owner and Holder of the Second Note.

118.   The Second Loan is now being serviced by CLC CONSUMER SERVICES CO.

119.   (*) CLC CONSUMER SERVICES CO. has not credited all payments to Plaintiff's account.

120.   (*) E-Trade is party to a contract related to the Second Loan.

121.   E-Trade has not recorded any assignment in the county property records.

122.   (*) E-Trade keeps records for all loans, including the Second Loan, in a form ready to produce for government inspection in case of an audit.

123.   (*) E-Trade and CLC CONSUMER SERVICES CO. keep accounting entries for the Second Loan in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the Second Loan.  These accounting ledger entries can be produced in a form similar to that described in the accounting textbooks listed above.

124.   (*) The Second Note is not currently held by a legal entity of the type that is authorized to own and hold Notes (e.g. an individual, corporation, partnership, etc.)

125.   (*) The Holder has discharged the Second Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

126.   If the identity of the owner and holder of the Second Note is not established now, someone else may show up later holding the Second Note and sue Plaintiff or otherwise attempt to collect.

18

SECOND AMENDED COMPLAINT

127.    Federal Reserve Notes do not trade at par with gold or silver coin.  For example, the American Gold Eagle Ten-Dollar Coin costs more than $10.00 in Federal Reserve Notes, and the Spanish Milled Dollar costs more than one $1.00 Federal Reserve Note.

### First Cause of Action - Quiet Title
### (Against All Defendants)

For his first claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

128.    At all times relevant to this Complaint, Plaintiff was and is in possession and has been in continuous possession of the Homestead, against all the world, and has paid all lawful property taxes thereon.

129.    Plaintiff has superior and legal title to, and other interest in, the Homestead.

130.    At all times relevant to this Complaint, Plaintiff was and is the owner of the Homestead and entitled to such ownership and use without interference by Defendants.

131.    Defendants' claims to any right, title or interest in the property are false and without merit.

132.    Defendants' purported security interest is void because of the rescission.

133.    (*) Defendants are not the owners or holders of any promissory note encumbering the Homestead.

134.    Plaintiff bring this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

135.    Plaintiff seek rescission of the loan, Judgment, Order and Decree quieting title to the Homestead in Plaintiff as of March 25, 2008, which is the date the Complaint in this case was filed, and such further equitable relief as the Court deems proper.

### Second Cause of Action _ Truth in Lending Act (15 U.S.C. § 1601 et seq.)

19

SECOND AMENDED COMPLAINT

**(Against Defendants AMERICAN HOME MORTGAGE INVESTMENT CORP.;
AMERICAN BROKERS CONDUIT, LLC;
NATIONAL CITY MORTGAGE;
AMERICAN HOME MORTGAGE SERVICING, INC.;
CLC CONSUMER SERVICES CO.;
E*TRADE BANK)**

For his second claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

### COUNT I: TILA RESCISSION

136.   (*) The First and Second Lenders failed to disclose the true identity of the creditor at closing, as required by 15 U.S.C. § 1638(a)(1).

137.   The violations alleged above are apparent on the face of the disclosure statement.

138.   (This paragraph has been omitted.)

139.   Plaintiff hereby timely rescinds the loans.  I WISH TO CANCEL.

140.   As a result, the security interests are void.

141.   The First and Second Lenders and E-Trade are jointly and severally liable for recording all necessary documents reflecting the termination of the void security interests within 20 days of receipt of notice of rescission.

142.   (This paragraph has been omitted.)

143.   (This paragraph has been omitted.)

144.   (This paragraph has been omitted.)

**Third Cause of Action - Breach of Contract
(Against Defendants AMERICAN HOME MORTGAGE INVESTMENT CORP.;
AMERICAN BROKERS CONDUIT, LLC;
NATIONAL CITY MORTGAGE)**

20

SECOND AMENDED COMPLAINT

145.    For his third claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

146.    This claim arises under California contract law.

147.    (*) Plaintiff and Defendants entered into enforceable contracts, planned and drafted by Defendants.  Without limitation, the contracts called for the First and Second Lenders to make "a loan."

148.    (*) The contracts were unconscionable, because they called for performance by Plaintiffs, but called for no performance by Defendants, instead they falsely assumed that Defendants had already performed.

149.    (*) Plaintiff performed all conditions precedent to Defendants' performance.

150.    (*) Defendants unjustifiably breached the contract(s). Without limitation, each Defendant failed to make "a loan."

151.    (*) Plaintiff suffered actual and consequential damages or loss proximately caused by that breach.

152.    (*) Defendants, by breaching the contracts, repudiated them.  Plaintiff hereby indicates that he accepts Defendants' repudiations so that the contracts are discharged.

153.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential damages exceeding $520,000.00 plus, treble damages, punitive damages, and other damages to be determined at trial, for which Defendants are jointly and severally liable.

### Fourth Cause of Action - Breach of Fiduciary Duty
### (Against Defendants MERSCORP, INC.;
### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)

SECOND AMENDED COMPLAINT

154.    For his fourth claim for relief, Plaintiff realleges and incorporates the above paragraphs and

further alleges:

155.    (*) MERSCORP, INC. is responsible and liable for the actions of its wholly-owned

subsidiary, MERS.

156.    (*) In transactions not involving MERS, an Assignment is recorded in the county property

records each time a loan is assigned, therefore the identity of the owner of the loan is public

record.

157.    (*) In transactions involving MERS, no such Assignments are recorded, therefore the

borrower has no way of knowing who owns the loan. MERS, the current owner, and the

immediately previous owner are the only parties who know who owns the loan.

158.    (*) Because of MERS' superior knowledge, MERS has more than an ordinary business

relationship with borrowers.  MERS has a fiduciary duty to inform Plaintiff who owns the First

Loan.

159.    (*) MERS did not inform Plaintiff who owns the First Loan.

160.    (*) As a result of MERS' wrongful actions, Plaintiff suffered actual and consequential

damages exceeding $520,000.00 plus, treble damages, punitive damages, and other damages to be

determined at trial, for which Defendants are jointly and severally liable.

**Fifth Cause of Action - Real Estate Settlement Procedures Act**
**(12 U.S.C. § 2601 et seq.)**
**(Against Defendants AMERICAN HOME MORTGAGE INVESTMENT CORP.;**
**AMERICAN BROKERS CONDUIT, LLC;**
**AMERICAN HOME MORTGAGE SERVICING, INC.;**
**CLC CONSUMER SERVICES CO.)**

SECOND AMENDED COMPLAINT

For his fifth claim for relief, Plaintiff realleges and incorporates the above paragraphs and further alleges:

## COUNT I: YIELD SPREAD PREMIUM

161.   (*) The First Lender paid a "Premium Yield Adjustment," otherwise known as a Yield Spread Premium, in the amount of $14,687.50, to the broker Park Place Funding POC, for no service or work other than the choice of a loan with a high interest rate, in violation of the anti-kickback provision of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA").

162.   Institutional lenders normally are not required to disclose a Yield Spread Premium. The reason is that institutional lenders sell their loans in a true "Secondary Market Transaction" sometime after the loan is closed. This means that the loan is sold at a later time and their true "Yield Spread" or additional revenue is not yet known.

163.   (*) However, in this case, the First Loan was sold before it was funded.

164.   (*) The trading among MERS members is not a true "Secondary Market Transaction."

165.   (*) Therefore, the Yield Spread was known.

## COUNT II: RESPA KICKBACK

166.   Plaintiff restates and realleges the above paragraphs as if fully set forth herein.

167.   The claim stated in this Count is brought under RESPA, 12 U.S.C. § 2601, et seq. Plaintiff is a party to a federally related mortgage loan pursuant to 12 U.S.C. §§ 2602(1) and 2607.

168.   As part of the scheme alleged in this Complaint, MERS members including the First Lender give, and MERS accepts, kickbacks pursuant to an agreement or understanding that business incident to or part of real estate settlement services involving federally related mortgage

SECOND AMENDED COMPLAINT

loans shall be referred to MERS. The First Lender gave such a kickback in this case. Such kickbacks violate 12 U.S.C. § 2607(a) and are not waivable violations.

169.     When a MERS member, including the First Lender, originates a federally related mortgage loan, including the loan in dispute, and registers the note and mortgage with MERS, it passes on the $3.95 MERS registration fee to the borrower. It passes on the fee by including it within the fees disclosed on the HUD-1 Settlement Statement.

170.     The MERS member, including the First Lender, kicks back to MERS the $3.95 registration fee received from the borrower, including Plaintiff, upon payment of the settlement costs. This kickback is payment for avoidance of government recording fees for all subsequent transfers of any interest in the mortgage. Such avoidance is made possible by the MERS registration system.

171.     The MERS member, including the First Lender, kicks back the MERS registration fee to MERS pursuant to an agreement or understanding that the business of registering all subsequent sales of the note and mortgage should be referred to MERS. Such kickbacks violate 12 U.S.C. § 2607(a).

172.     Such kickbacks occurred in connection with the settlements of the federally related mortgage loans to which Plaintiff was a party.

173.     Pursuant to 12 U.S.C. § 2607 Plaintiff is entitled to three times the amount charged for the settlement services involved and Plaintiff is further entitled to costs and attorneys fees, to be paid by the Defendants.

**_COUNT III: RESPA UNEARNED CHARGES_**

174.     Plaintiff restates and realleges the above paragraphs as if fully set forth herein.

SECOND AMENDED COMPLAINT

24

175.    As part of the scheme alleged in this Complaint, MERS members including the First

Lender charge the borrower and pass on to MERS, and MERS accepts, the $3.95 MERS

registration fee that is assessed to the First Lender in connection with federally related mortgage

loans. Defendants pass this charge on to the borrower even though the borrower does not benefit

from this service. This charge is made to and received from the borrower for services that do not

benefit the borrower.

176.    The service actually performed for the borrower is payment of government recording fees.

The $3.95 MERS registration fee is a charge for a service other than payment of government

recording fees. The charging of this $3.95 MERS registration fee to the borrower, and the giving

by MERS members and acceptance by MERS of this fee violates 12 U.S.C. § 2607(b) and is not a

waivable violation.

177.    Such charges for a service not actually performed occurred in connection with the

settlements of federally related mortgage loans to which Plaintiff was a party.

178.    (*) As a result of Defendants' wrongful actions, Plaintiff suffered actual and consequential

damages exceeding $520,000.00 plus, treble damages, punitive damages, and other damages to be

determined at trial, for which Defendants are jointly and severally liable.

### COUNT IV: RESPA SERVICING

179.    Plaintiff provided written letters to Defendants AMERICAN HOME MORTGAGE

SERVICING, INC. and CLC CONSUMER SERVICES CO. that included Plaintiff's name and

account number, and provided sufficient detail to the servicer regarding information sought by

Plaintiff, satisfying section 6 of RESPA. Those letters constituted "qualified written requests."

SECOND AMENDED COMPLAINT

180.   AMERICAN HOME MORTGAGE SERVICING, INC. and CLC CONSUMER

SERVICES CO. failed to respond within 60 days.

181.   (*) As a result, Plaintiff suffered actual and consequential damages and other damages to

be determined at trial.

182.   Plaintiff is entitled to an accounting from each Defendant of all funds handled in any way

concerning the mortgage loan.

### Sixth Cause of Action - Nuisance / Wrongful Foreclosure
### (Against Defendants AHMSI DEFAULT SERVICES INC. T.D. SERVICE COMPANY; OPTION ONE MORTGAGE CORPORATION)

For his sixth claim for relief, Plaintiff realleges and incorporates the above paragraphs and

further alleges:

182-1.  AHMSI DEFAULT SERVICES INC., by its agent T.D. SERVICE COMPANY,

wrongfully recorded Notice of Default at the request of OPTION ONE MORTGAGE

CORPORATION.

183-2. The Notice of Default was wrongful because, as of the time of time of filing this Complaint,

Plaintiff was current on his payments.

182-2.  Upon information and belief, neither T.D. SERVICE COMPANY nor OPTION ONE

MORTGAGE CORPORATION, nor its principal(s), have any right to foreclose, because they are

not the owner and holder of the Note.  Instead, the owner and holder of the Note is a "Special

Purpose Entity" / "Special Purpose Vehicle" shell corporation.

182-3.  Defendants' unauthorized foreclosure attempts prevent Plaintiff's quiet enjoyment of the

property, and constitute a nuisance which should be abated.

### Seventh Cause of Action - Fair Debt Collection Practices Act
### (15 U.S.C. § 1692_1692o)

SECOND AMENDED COMPLAINT

26

**(Against Defendants T.D. SERVICE COMPANY; OPTION ONE MORTGAGE
CORPORATION)**

For his seventh claim for relief, Plaintiff realleges and incorporates the above paragraphs, particularly the Sixth Cause of Action, and further alleges:

182-1.  Each Defendant is a "debt collector" under 15 U.S.C. § 1692(c)(6).

182-2.  Each Defendant used false, deceptive, and misleading representation and means in connection with the collection of the alleged debt, in violation of 15 U.S.C. § 1692e.

182-3.  Each Defendant used unfair and unconscionable means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692f.  On or about August 9, 2008, both Defendants jointly sent a debt collection letter to Plaintiffs.  On or about August 28, 2008, Plaintiffs sent a debt dispute letter to T.D. Service Company.  Defendants continued debt collection attempts without verifying the debt.

182-4.  As a result of Defendant's wrongful actions, Plaintiffs face a scheduled wrongful foreclosure of his home, and otherwise suffered actual and consequential damages to be determined at trial, for which Defendants are jointly and severally liable.

**Prayer for Relief:**

183.    Plaintiff pray this honorable Court take jurisdiction of this case.

184.    Plaintiff pray for Decrees and Judgments as follows:

185.    Enjoin, immediately, all Defendants, during the pendency of this action, and permanently thereafter, from recording any mortgages regarding the Homestead;  from selling, assigning or transferring mortgages or obligations relating to the Homestead;  from instituting, prosecuting, or

SECOND AMENDED COMPLAINT

maintaining nonjudicial or judicial foreclosure proceedings against the Homestead;  from

instituting, prosecuting, or maintaining ejectment or F.E.D. proceedings against Plaintiff;  or from

otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of the Homestead.

186.    Award to Plaintiff his reasonable costs, disbursements and prejudgment interest.

187.    Declaratory judgment that the alleged contract is unconscionable.

188.    Declaratory judgment that Plaintiff has clear title to the property, free from any

encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiff's

property, or in the alternative, reformation of the contract.

189.    An accounting from each Defendant of all funds handled in any way concerning the

mortgage loan.

190.    On Plaintiff's First Claim (Quiet Title):

(A) a Judgment and Decree quieting title in favor of Plaintiff as of March 25, 2008,

which is the date the Complaint in this case was filed;

(B) Order all Defendants to rescind and cancel the alleged loan in its entirety and

return to Plaintiff any and all of their original signed documents;

(C) Order all Defendants to take all action necessary to terminate any security in the

Homestead created under the transaction and that the Court declare all such security void,

including but not limited to the aforementioned mortgage.

191.    On Plaintiff's Second Claim (TILA): a Judgment and Decree for rescission of the loan,

punitive damages, actual damages, attorney fees and costs, against AMERICAN HOME

MORTGAGE INVESTMENT CORP.;  AMERICAN BROKERS CONDUIT, LLC; NATIONAL

SECOND AMENDED COMPLAINT

CITY MORTGAGE; AMERICAN HOME MORTGAGE SERVICING, INC.; CLC CONSUMER

SERVICES CO.; and E*TRADE BANK, which are jointly and severally liable;

192.   On Plaintiff's Third Claim (Breach of Contract):

(A) a Judgment and Decree for $575,000.00, interest, punitive damages, actual

damages, attorney fees and costs, against AMERICAN HOME MORTGAGE INVESTMENT

CORP.; AMERICAN BROKERS CONDUIT, LLC; and NATIONAL CITY MORTGAGE, which

are jointly and severally liable;

(B) Order Defendants to rescind and cancel the alleged contract in its entirety and

return to Plaintiff any and all of their original signed documents; or in the alternative, money

judgment in an amount sufficient to retire the alleged contract;

193.   On Plaintiff's Fourth Claim (Breach of Fiduciary Duty): a Judgment and Decree for

$575,000.00, interest, punitive damages, actual damages, attorney fees and costs, against

MERSCORP, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., for

which they are jointly and severally liable;

194.   On Plaintiff's Fifth Cause of Action (RESPA):

A. An award of judgment entitling Plaintiff to all remedies set forth in 12 U.S.C. § 2607.

B. An award of judgment entitling Plaintiff to all remedies set forth in 18 U.S.C. § 1964(c).

C. An award to Plaintiff of all other remedies that equitably and reasonably flow from

Defendants' breaches of federal law and the obligations that arise therefrom;

D. a Judgment and  Decree in favor of Plaintiff against Defendants, actual damages in the

amount of $75,000 or an amount to be proven at trial, statutory damages, other general and

consequential damages, punitive damages, money judgment in the amount of $75,000 or an

SECOND AMENDED COMPLAINT

amount sufficient to retire the contract; and for such other relief as the Court deems just and proper to be ascertained at trial.

194-1.  <u>On Plaintiff's Sixth Claim Nuisance / Wrongful Foreclosure: an order that Defendants T.D. SERVICE COMPANY and OPTION ONE MORTGAGE CORPORATION abate the nuisance by ceasing their unauthorized foreclosure attempts.</u>

194-2.  <u>On Plaintiff's Seventh Claim (FDCPA): a Judgment and Decree for $1,000.00 per violation, punitive damages, actual damages and costs, against Defendants T.D. SERVICE COMPANY and OPTION ONE MORTGAGE CORPORATION.</u>

195.    Such other relief as the Court deems just and proper.

196.    Finally, Plaintiff is not an attorney and is inexperienced in procedure as practiced in the Federal Courts.  If this submission is found wanting in one or more particulars, it is incumbent upon the Court to inform Plaintiff of the deficiencies, their specifics and assist the Plaintiff in correcting the submission, and the Plaintiff hereby respectfully requests such assistance.

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  See 28 U.S.C. 1746.

Executed on: 10 / 15 /2008

William Boles
26740 Kingwood Road
Murrieta, CA   92563

SECOND AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that upon the date last written below I served a true copy of the foregoing on the following parties by first class U.S. mail:

**Merscorp, Inc.**
**Mortgage Electronic Registration Systems, Inc.**
c/o Michael R Brooks
Jolley Urga With Woodbury & Standish
3800 Howard Hughes Pkwy
Suite 1600
Las Vegas, NV 89169

**E Trade Bank**
c/o John A Hendry
John A Hendry Law Offices
1020 Mission Street, Suite G
South Pasadena, CA 91030-3146

**National City Mortgage**
c/o Stuart B. Wolfe, Esq.
c/o Ryan K. Woodson, Esq.
WOLFE AND WYMAN, LLP
5 Park Plaza Suite 1100
Irvine, CA 92614

**CLC Consumer Services Co.**
c/o Daniel A Shama
Severson and Werson
19100 Von Karman, Suite 700
Irvine, CA 92612

10 /15 /2008

William Boles

SECOND AMENDED COMPLAINT

31